Robert B. Wolinsky (*pro hac vice motion forthcoming*)
Kathryn L. Marshall (SBN 282042)
robert.wolinsky@hoganlovells.com
kathryn.marshall@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

Attorneys for Plaintiff
NEMETONA TRADING LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMETONA TRADING LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>KURT ORBAN PARTNERS, LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nemetona Trading Limited, by and through its attorneys, alleges as follows:

**PARTIES**

1. Nemetona Trading Limited ("Nemetona Trading") is a commodity broker organized under the laws of the United Kingdom, with its principal place of business at Oak Suite Heston Court, 19 Camp Road, Wimbledon, London SW19 4UW. Nemetona Trading formerly did business under the name of "Nerida Trading Limited," but the corporate entities are the same.

2. Kurt Orban Partners, LLC ("Kurt Orban" or "Defendant") is a limited liability company organized under the laws of the State of California, with its principal place of business at 111 Anza Boulevard, Suite 350, Burlingame, CA

94010.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a). Defendant is a citizen of the State of California, and Plaintiff is a foreign company organized under the laws of the United Kingdom. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(d). A corporation is deemed to reside in any judicial district in which its contacts would be sufficient to subject it to personal jurisdiction at the time the action is commenced. Defendant Kurt Orban is, and at all times relevant to this Complaint was, a California limited liability company with its principal place of business at 111 Anza Boulevard, Suite 350, Burlingame, CA 94010. Kurt Orban is, and at all times relevant to this Complaint was, doing business in and directing its activities from this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## BACKGROUND

5. In July 2013, Plaintiff Nemetona Trading sold approximately $1.1 million in drill collars to Defendant Kurt Orban to be delivered to Kurt Orban at Houston, Texas. The agreement for sale was set forth in a series of 15 purchase orders issued by Defendant and countersigned by Nemetona Trading on July 11, 2013.

6. Kurt Orban received and accepted Nemetona Trading's shipment of drill collars in Houston, Texas during September of 2013. On information and belief, Kurt Orban thereafter placed the drill collars in a free trade zone, in Kurt Orban's name, until such time as the collars could be used by Kurt Orban in its operations.

7. Nemetona Trading consistently and repeatedly requested payment in accordance with the terms of the purchase orders, which provided for payment by telegraphic transfer "against faxed copies of [the bills of lading] and shipping documents." Ex. A, ¶ 6.

2 Case No.
COMPLAINT AND DEMAND FOR JURY TRIAL

8. Nemetona Trading faxed to Kurt Orban copies of the purchase orders, bills of lading, and invoices for the drill collars in July of 2013. Kurt Orban, however, has refused to comply with its contractual obligation to pay Nemetona Trading for the drill collars that it purchased.

9. In view of Kurt Orban's refusal to pay for the drill collars that it purchased, Nemetona Trading undertook to mitigate its damages by finding an alternative buyer. Nemetona Trading identified a firm buyer for certain 6-inch drill collars retained by Kurt Orban. Plaintiff has thus far received a copy of a release order for certain of the collars, but has not yet obtained possession of the drill collars.

10. Even if the drill collars are resold to Plaintiff's firm buyer, the resale purchase price that Nemetona Trading has been able to negotiate is lower than the original purchase price agreed to by Kurt Orban. Upon such sale, Nemetona Trading will be injured in the amount of difference between the original purchase price accepted by Kurt Orban and the reduced resale price that it can obtain.

11. Defendant recently has claimed, without merit, that the drill collars were sold "on consignment." That is not correct. The purchase orders are clear and unambiguous, constituting a cash sale for the prices listed in the purchase orders.

## COUNT I

### (Breach of Contract)

12. Nemetona Trading hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs, as though fully set forth herein.

13. The purchase orders exchanged between Plaintiff and Defendant serve as valid and enforceable contracts.

14. At the time of sale, Nemetona Trading transmitted to Kurt Orban signed purchase orders which Kurt Orban had reason to know served as confirmations of the contract for sale of the drill collars. Kurt Orban did not object to such purchase

orders, in writing or otherwise.

15. Kurt Orban received and accepted the drill collars, which it thereafter placed into storage in the United States.

16. Nemetona Trading has fully performed all of its obligations under the parties' agreements.

17. Kurt Orban has breached and has stated its intention to continue to breach the parties' contract for sale of the drill collars by failing to pay to Nemetona Trading the amount due for the drill collars.

18. As the direct and proximate result of Kurt Orban's breach of contract, Nemetona Trading has been injured in the amount of lost revenues due under the terms of sale. As a further direct and proximate result of Kurt Orban's breach of contract, Nemetona Trading has incurred additional damages, in an amount to be proven at trial, in its efforts to recover the drill collars and locate a new buyer.

## COUNT II
## (Conversion)

19. Nemetona Trading hereby incorporates by reference and realleges each of the allegations contained in the foregoing paragraphs, as though fully set forth herein.

20. Contrary to the original agreement of the parties, Kurt Orban recently has contended that the sale of the above-referenced drill collars between the parties constituted a "consignment sale." Kurt Orban did not raise the claim of a consignment sale prior to the instant dispute arising in June 2014.

21. While Nemetona Trading strongly disputes Kurt Orban's newfound claim which has no evidence to support it, if the agreement between the parties were to reflect a "consignment sale," title to the drill collars would remain with Nemetona Trading which has, at all times relevant herein, been the owner of and entitled to repossession of the drill collars.

22. Kurt Orban wrongfully interfered with the interests of Nemetona Trading

1  by retaining the drill collars, despite Plaintiff's demand for their return.  Kurt Orban
2  has further denied to Nemetona Trading access to the drill collars, which Plaintiff
3  has attempted to resell in order to mitigate its damages.
4  　　23.　　As a result of Kurt Orban's conversion of the drill collars, Nemetona
5  Trading has been damaged in an amount to be proven at trial, including all
6  compensatory and incidental damages.  Alternatively, Plaintiff is entitled to
7  damages and immediate recovery of the converted property and will seek its
8  election of remedies at trial.  Plaintiff is further entitled to compensation for its
9  efforts expended in pursuing the return of the drill collars.
10  　　24.　　 In wrongfully retaining the drill collars, Kurt Orban acted willfully and
11  maliciously, in conscious disregard of the rights of Nemetona Trading.  Plaintiff is
12  therefore entitled to punitive damages according to proof at the time of trial.

## COUNT III

### (Constructive Trust Pursuant to Cal. Civ. Code § 2223, 2224)

15  　　25.　　Nemetona Trading hereby incorporates by reference and realleges each of
16  the allegations contained in the foregoing paragraphs, as though fully set forth
17  herein.
18  　　26.　　Kurt Orban has been unjustly enriched as a result of its breach of the
19  contract for sale of the drill collars, under which it promised to pay Nemetona
20  Trading the purchase price for the drill collars that it received and accepted.
21  　　27.　　By reason of the wrongful manner in which Kurt Orban acquired and
22  retained the drill collars, it is an involuntary trustee holding the drill collars in
23  constructive trust for Nemetona Trading, with the duty to reconvey the drill collars
24  to Nemetona Trading forthwith.

## PRAYER FOR RELIF

27  　　WHEREFORE, Nemetona Trading prays for judgment as follows:
28  　　A.　　Entry of judgment holding Kurt Orban liable for breach of contract;

1     B.    Compensatory damages under each of the counts recited above;

2     C.    Incidental damages incurred by Nemetona Trading in its attempt to mitigate losses;

4     D.    Interest accrued on the debt owed by Kurt Orban to Nemetona Trading;

5     E.    Punitive damages according to proof at trial;

6     F.    An order imposing a constructive trust on the drill collars unlawfully retained by Kurt Orban and compelling Kurt Orban to retransfer possession of the drill collars to Nemetona Trading;

9     G.    Plaintiff's reasonable attorney's fees and the costs of suit; and

10     H.    Any and all other legal and equitable relief as may be available under law and which the court may deem proper.

## DEMAND FOR JURY TRIAL

Nemetona Trading demands a jury trial for all issues so triable.

Dated: July 21, 2014    By: /s/ Kathryn L. Marshall

Robert B. Wolinsky (*pro hac vice forthcoming*)
Kathryn L. Marshall (SBN 282042)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
kathryn.marshall@hoganlovells.com
robert.wolinsky@hoganlovells.com

*Counsel for Nemetona Trading Limited*